# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    **v.**                                 **Case No. 09-CR-38**

**CHARNELL HICKS**
        **Defendant.**

---

### SENTENCING MEMORANDUM

Defendant Charnell Hicks pleaded guilty to distributing 5 grams or more of crack cocaine, contrary to 21 U.S.C. § 841(a)(1) & (b)(1)(B), and I set the case for sentencing. In imposing sentence, I first determined the sentencing guideline range, then selected the ultimate sentence on consideration of all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008).

### I. GUIDELINES

Based on a relevant conduct drug weight of 21.5 grams, the pre-sentence report ("PSR") set a base offense level of 26 under U.S.S.G. § 2D1.1(c)(7). However, the PSR then determined that defendant qualified as a career offender under U.S.S.G. § 4B1.1, producing a base offense level of 34. The report subtracted 3 levels for acceptance of responsibility under U.S.S.G. § 3E1.1, for a final level of 31. Coupled with defendant's criminal history category of VI, the report recommended an imprisonment range of 188-235 months.

Defendant objected to the base offense level of 26, arguing that a 1:1 ratio between

crack and powder should apply.[1]  The court may consider the crack/powder disparity under §

3553(a), see Kimbrough v. United States, 552 U.S. 85 (2007), but it must first calculate the

guidelines, which have not been amended to reflect a 1:1 ratio.  In any event, the base level

in this case was derived not from the drug trafficking guideline but rather from the career

offender guideline, and defendant made no specific objection to that designation.  I therefore

adopted the PSR's guideline calculations.

## II.  SECTION 3553(a)

### A.    Sentencing Factors

Section 3553(a) directs a sentencing court to consider:

(1)    the nature and circumstances of the offense and the history and characteristics
of the defendant;

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law,
and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training,
medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the advisory guideline range;

(5)    any pertinent policy statements issued by the Sentencing Commission;

(6)    the need to avoid unwarranted sentence disparities; and

---

[1]The base level for an equivalent amount of powder would have been 12.  U.S.S.G. §
2D1.1(c)(14).

2

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute requires the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public, and rehabilitation of the defendant. While the guidelines will generally be the starting point and the initial benchmark in making this determination, the court may not presume that the guideline sentence is the correct one. Rather, the court must consider all of the § 3553(a) factors and make an individualized assessment as to the appropriate sentence. See Gall v. United States, 552 U.S. 38, 49-50 (2007).

**B.     Analysis**

**1.     The Offense**

On two occasions in 2008, defendant sold crack cocaine to a confidential source working with law enforcement. The first sale, involving 6.4 grams, occurred on February 15, 2008, and the second (which corresponded to the specific count of conviction) involved the sale of 15.1 grams on September 23, 2008. The PSR provided specifics on the two sales in ¶¶ 9-11. Defendant received a total of $950 in buy money for these two transactions.

**2.     The Defendant**

Defendant was thirty-four years old, with a substantial prior record including three previous controlled substance offenses, resulting in his designation as a career offender. In 1996, a state court placed defendant on probation for possessing cocaine with intent to distribute, but he was later revoked for firearm possession, which also resulted in a separate

3

conviction in 1997 for felon-in-possession. He was released from prison on those sentences in 2002, but within about two years he picked up another drug case, this time possession of marijuana with intent to distribute. He received probation again, but was again revoked and sent to prison in 2005, based primarily on another new drug case, possession with intent to deliver cocaine, on which he was convicted in 2006. The state court again gave him probation for the 2006 drug case, but he was again revoked in 2009, largely for the conduct before me in the instant case. His record also contained two convictions for misdemeanor battery.

Defendant's mother remained supportive, stating that he was doing better recently, working and caring for his grandmother. Defendant stated much the same in his allocution and letters to the court, and the PSR confirmed some work in 2008. One of his sisters also made a positive statement to the PSR writer, and I received a positive letter from another relative.

Defendant had two young children, both of whom lived with their mothers. One of the mothers, the victim in his most recent battery case, held a restraining order against him. He also owed about $2000 in back child support for the other child. To his credit, defendant did seem to be thinking about his kids and making plans for the future, based on his statements in court, to the PSR writer (PSR ¶ 63) and in his letters. He had people in the community who cared about him, which would assist him on release.

Defendant admitted a serious problem with marijuana and cocaine, which required treatment. Additional correctional needs included completion of his GED, towards which he had made some efforts. (PSR ¶ 77.) I also recommended that he avail himself of any vocational training offered by the Bureau of Prisons, as his work record was limited to a job he held for about four months in 2008 and another he held for four or five months in 1997.

4

### 3. The Sentence

As indicated above, the guidelines in this case called for a sentence of 188-235 months based on defendant's designation as a career offender, and the government recommended a sentence at the low end, running concurrent with defendant's state sentences after revocation. Without minimizing the seriousness of defendant's record – this was his fourth drug distribution case, and he fell in criminal history category VI based on points alone – I found the guideline range somewhat greater than necessary to satisfy the purposes of sentencing.

First, the range was somewhat greater than necessary to provide just punishment given the nature of the offense. These were two sales of relatively small amounts of crack cocaine, a total of 21.5 grams, for a total of $950. The record contained no indication of violence, weapon possession or threats associated with the offense. It also appeared that, regarding the September 2008 sale, defendant essentially acted as a middle-man. Thus, although crack distribution in any amount is a serious crime, a sentence exceeding 15 years was greater than necessary to provide just punishment under the specific facts of this case.

Second, again without minimizing defendant's record, I noted that his prior drug cases also involved relatively small amounts. The record contained no indication that defendant was a drug dealer of any significance. The Sentencing Commission has acknowledged that incapacitating a low-level drug dealer prevents little, if any, drug selling; the crime is simply committed by someone else. See United States Sentencing Commission, Fifteen Years of Guideline Sentencing 133-34 (Nov. 2004).

Finally, I gave defendant some credit for his recent positive progress: working, caring for his grandmother, and making efforts towards a GED. In his allocution, which I found sincere, defendant indicated that he had plans and was focused on the future; he said he was

5

done with this life.

These factors supported a sentence somewhat below the range, but a significant term of imprisonment was still warranted. General deterrence may play a limited role in these types of cases, but specific deterrence was an issue here. The relatively lenient treatment defendant received in state court had not sufficed to deter him. I also had to impose a significant period of confinement to protect the public from further crimes of the defendant.

Under all the circumstances, I found a sentence of 132 months sufficient but not greater than necessary. This sentence provided sufficient deterrence and community protection, while acknowledging the mitigating aspects of the case. The sentence varied modestly from the guideline range, and because it was based on the specific facts of the case and Commission study it created no unwarranted disparity.

Defendant argued for a sentence far below the range, based on the mitigating aspects of the case and the reflection of the crack/powder disparity in the career offender guideline. Defendant acknowledged United States v. Welton, 583 F.3d 494, 497-99 (7th Cir. 2009), in which the Seventh Circuit held that Kimbrough provides no authority for a district court to disagree with the crack/powder disparity embedded in § 4B1.1. However, he argued that the Supreme Court's decision to vacate and remand the sentence in Vasquez v. United States, No. 09-5370 (U.S. Jan. 19, 2010), meant that Welton no longer applied. But in Vasquez, the Eleventh Circuit held that district courts had no authority to disagree with the guidelines' treatment of career offenders, 558 F.3d 1224, 1227-28 (11th Cir. 2009), a position the Seventh Circuit has not taken, see Welton, 583 F.3d at 499 ("As we cautioned in Harris, our analysis 'should not be read to suggest that § 4B1.1 is any less advisory for a district judge than the other sentencing guidelines.'") (quoting United States v. Harris, 536 F.3d 798, 813 (7th Cir.

6

2008)).

In any event, given my case-specific findings set forth above, it was unnecessary to specifically address defendant's argument based on the crack-powder disparity reflected in the career offender guideline.  The sentence I imposed was slightly below the range if this had been a powder case[2] and would have been the same even if I could have disregarded Welton.[3] See also United States v. Huffstatler, 571 F.3d 620, 623-24 (7th Cir. 2009) (explaining that while district courts are permitted to disagree with flawed guidelines they are not required to do so).

Consistent with the government's recommendation, I ran the instant sentence concurrently with defendant's state sentences after revocation.   While the guidelines recommend a consecutive term where, as here, the undischarged sentence is based on a revocation, see U.S.S.G. § 5G1.3 cmt. n.3(C), the Seventh Circuit has acknowledged that a concurrent term is reasonable where, as was also the case here, the revocation is based on the instant offense conduct, see United States v. Huusko, 275 F.3d 600, 603 (7th Cir. 2001). Given the length of the instant sentence, and the timing, this sentence produced a significant

---

[2]If this had been a powder cocaine case, the base level under U.S.S.G. § 4B1.1 would have been 32 rather than 34, and the final range 151-188 rather than 188-235.

[3]To the extent that defendant asked me to simply disregard the career offender designation altogether and treat this as a powder cocaine case (for which the guideline range would have been about 24-30 months, below the statutory mandatory minimum of five years applicable in this case), I declined the suggestion.  While a sentence within the career offender guideline range was not, for the reasons set forth in the text, necessary to satisfy the purposes of sentencing, a sentence at or around the mandatory minimum would have been plainly insufficient.  Defendant fell in criminal history category VI even absent the career offender designation, and his record was not strictly limited to drug cases: he also had a firearm possession conviction and two battery convictions.  As indicated above, a significant prison term was necessary to deter defendant from re-offending and to protect the public under § 3553(a)(2)(B) & (C).

7

additional punishment, sufficient to satisfy the factors set forth in 18 U.S.C. § 3584 and U.S.S.G. § 5G1.3 cmt. n.3(A).

### III. CONCLUSION

I therefore committed defendant to the custody of the Bureau of Prisons for 132 months running concurrent with the sentences in State of Wisconsin Case No. 04-CF-371 and 05-CF-972. I recommended that he participate in any substance abuse treatment available, including the 500 hour program. On release, I ordered him to serve a four year supervision term, with a drug aftercare and other conditions that appear in the judgment.

Dated at Milwaukee, Wisconsin, this 19th day of February, 2010.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

8